### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

_____

IN RE:

   JOSE MARCOS MONTALVO,

         DEBTOR

_____

)
)
)
)
)
)
)

CASE NO. 16-70186
(Chapter 11)

### PLAN OF PARTIAL LIQUIDATION PROPOSED BY THE DEBTOR
### <u>UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE</u>

/s/Antonio Martinez, Jr.
The Law Office of Antonio Martinez, Jr., P.C.
State Bar. No. 24007607
317 West Nolana Ave.,
Suite C McAllen, Texas 78504
956-683-1090 voice
martinez.tony.jr@gmail.com

ATTORNEY FOR DEBTOR AND
DEBTOR-IN-POSSESSION

DATED:     September 7, 2018
              McAllen, Texas

Jose Marcos Montalvo, the Debtor in the above-captioned bankruptcy case, hereby proposes the following Plan of Partial Liquidation pursuant to subsection 1121(a) of the Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS

A.    Defined Terms. In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.    "Administrative Expense" means any cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.02.    "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

1.03.    "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtor through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

1.04.    " Avoidance  Action " means a cause of action assertable by either the Debtor or the Reorganized Debtor pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

1.05.    "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.06.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.07.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, McAllen Division, or such other court having jurisdiction over all or any part of

the Chapter 11 Case.

1.08.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including applicable local rules of the Bankruptcy Court.

1.09.   "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.10.   "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.11.   "Chapter 11 Case" means the above captioned and numbered reorganization case of the Debtor under Chapter 11 of the Bankruptcy Code.

1.12.   "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.13.   "Claimant" means the holder of a Claim.

1.14.   "Class" means a class of Claims or Interests as described in this Plan.

1.15.   "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.16.   "Collection Costs" means attorney's fees, expenses and other costs of collection which any Creditor may seek to recover from the Debtor pursuant to either the relevant loan documents or applicable law, but only to the extent actually Allowed by a Final Order.

1.17.   "Confirmation Date" means the date of entry of the Confirmation Order.

1.18.   "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.19.   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.20.   "Contested," when used with respect to a Claim, means a Claim against the Debtor that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the

scheduled amount; that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.21.   "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.22.   "Cure Claim" means the payment or other performance required to cure any existing default under an Executory Contract.

1.23.   "Debtor" means Jose Marcos Montalvo, the debtor and debtor-in- possession in the above-captioned Chapter 11 Case.

1.24.   "Disallowed," when used with respect to all or any part of a Claim or Equity Interest, means that portion of a Claim or Equity Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.25.   "Disclosure Statement" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.26.   "Distribution" means any payment or other distribution of property pursuant to this Plan.

1.27.   "Effective Date" means the later to occur of (a) fifteen (15) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fifteen (15) days after the Confirmation Date, and (b) the first Business Day that each of the conditions to the effectiveness of the Plan set forth in Article VIII below are satisfied or waived.

1.28.   "Estate Claims" shall include all claims and causes of action held by the Debtor's bankruptcy estate, including without limitation all Avoidance Actions.

1.29.   "Estate Defenses" shall refer to all defenses, affirmative defenses, counterclaims or offsets by the Debtor's bankruptcy estate against any Person, including but not limited to any Creditor.

1.30.   "Executory Contract" shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

1.31.   "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.32.   "General Unsecured Claim" means any Claim against the Debtor that is not an Administrative Expense, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Tax Claim, an Other Secured Claim, or a Shareholder Claim.

1.33.   "Initial Distribution Date," when used with respect to each Claim, means the later of (a) thirty (30) days after the Effective Date, or (b) sixty (60) days after the date on which a Contested

Claim becomes an Allowed Claim.

1.34.    "Interests" means any equity or stock ownership interest in the Debtor.

1.35.    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor contemplated by section 101(37) of the Bankruptcy Code.

1.36.    "Liquidation Analysis" means **Exhibit 4** to the Disclosure Statement.

1.37.    "New Common Stock" means the common stock in the Reorganized Debtor to be issued on or after the Effective Date.

1.38.    "Objection" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.39.    "Objection Deadline" means the day that is one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court.

1.40.    "Other Secured Claim" means any Secured Claim other than a Secured Tax Claim.

1.41    "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.42    "Petition Date" for most purposes means April 27, 2016, the date of the Chapter 13 filing date.

1.43.    "Plan" means this Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

1.44.    "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court in accordance with Article XIV of the Plan.

1.45.    "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.46.    "Priority Non-Tax Claim" means a Priority Claim other than a Priority Tax Claim.

1.47.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.48.    "Pro Rata Share," with respect to and Allowed Claim or Interest, means the proportion that the amount of such Allowed Claim or Interest (as the case may be), bears to the

aggregate amount of all Claims or Interests in a particular class, including Contested Claims or Interests, but not including Disallowed Claims as calculated on the Initial Distribution Date.

1.49.   "Professional" means those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

1.50.   "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory contract or unexpired lease.

1.51.   "Reorganized Debtor" means the Debtor from and after the Effective Date.

1.52.   "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.53.   "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly Allowed, but only to the extent of the value of the holder's interest in the Collateral that secures payment of the Claim; (b) a Claim against the Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured (General) Claim unless, in any such case the Class of which the Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

1.54.   "Secured Creditor" means the holder of a Secured Claim.

1.55.   "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.56.   "Substantial Consummation" means the day on which the Debtor has distributed 50% of the value of the plan distributions, in dollar or any other kind of distributions, under the terms and provisions of this Plan.

1.57.   "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.58.   "Unclaimed Property" means any cash, Distribution, or any other property of the Reorganized Debtor unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

B.   Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be

amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.   <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.   <u>Exhibits and Plan Documents</u>. All Exhibits to the Disclosure Statement and Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

> Antonio Martinez, Jr.
> The Law Office of Antonio Martinez, Jr., P.C.
> 317 West Nolana Ave., Suite C
> McAllen, Texas 78504
> martinez.tony.jr@gmail.com
> 956-683-1090

## ARTICLE II.

## <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>

2.01.   The following is a designation of the Classes of Claims and Interests under this Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and their treatment is set forth in Article III below. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class for voting and distribution purposes only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Secured Tax Claims of
> > City of Harlingen
> > Harlingen CISD
> > Cameron County
> > Hidalgo County
> > City of San Juan
> > City of Raymondville
> > Raymondville ISD
> > Ovation Services
> > Willacy County
> > Lyford CISD

Harlingen Downtown Improvement District

Class 2.1 – Other Secured Claims – Not litigated
    Roxana Mendez
    Internal Revenue Service

Class 2.2 – Other Secured Claims - Crammed Down Treatment
    Excel Finance Company
    Advance America

Class 2.3 – Other Secured Claims - Litigated
    Adolfo Vela

Class 2.4 – Other Secured Claims – Ongoing Mortgages
    Federal National Mortgage Association

Class 3 – Priority Tax Claims
    Internal Revenue Service

Class 4.1 – General Unsecured Claims
    *Internal Revenue Service* Claim No. 9

Class 4.2 – General Unsecured Claims – State Court Cases ongoing
    *Manuel Guerra* Claim No. 20

Class 4.3 – General Unsecured Claims – Satisfied Claims
    *Ford Motor Credit* Claim No. 4
    *Ovation* Services

Class 4.3 – General Unsecured Claims – Adversary Cases ongoing
    *TCPSP Corporation* Claim No. 1
    *TCPSP Corporation* Claim No. 3
    *Adolfo Vela* Claim No. 15

    2.02.  Impaired Classes of Claims and Interests. Only Classes 2.2 and 4.1 are impaired under the Plan.

    2.03.  Impairment or Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## TREATMENT OF CLAIMS AND INTERESTS

    THE FOLLOWING IS ARE THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH THE CONSUMMATION OF THE PLAN. IN THE EVENT OF ANY CONFLICT BETWEEN THE DISCLOSURE STATEMENT SUMMARY

AND THE PLAN, THE PLAN WILL CONTROL.

The Plan classifies the various Claims against and Interests in the Debtor. These Classes take into account the different nature and priority of Claims against and Interests in the Debtor. In addition, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and certain Priority Claims (other than Priority Tax Claims) are not classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims are treated separately as unclassified Claims.

A.      Unclassified Claims

Unclassified Claims against the Debtor consist of Administrative Expenses, and certain fees payable to the United States Trustee. This includes both ordinary post-petition business expenses and Claims attributable to the Debtor's Professionals.

Trade debt will be paid in the ordinary course of business. Fees and expenses owed to the Debtor's Professionals are payable upon the allowance of an appropriate fee application.

An Administrative Expense is any cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.      Payment of Administrative Claims

a.      Administrative Claims in General
Except as may be subject to the Bar Date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, cash equal to the allowed amount of such Administrative Claim either (i) as soon as practicable after the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Debtor and the holder of the Administrative Claim.

The procedures set forth above for Administrative Expenses shall not apply to Professionals, who shall each file and submit a final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for Administrative Expense by a Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with the Plan. Professional fees and expenses to any Professional incurred on or after the Effective Date may be paid without necessity of application to or order by the Court.

b.        Statutory Fees

On the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Bankruptcy Court shall be paid by the Debtor in cash equal to the amount of such Administrative Claims. All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Debtor in accordance therewith until the closing of the applicable Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.

c.        Bar Dates for Administrative Claims

i.        **General Administrative Bar Date Provisions**

Except as otherwise provided in <u>Section III.A.1.c.ii.</u> or in the Bar Date Order or other order of the Bankruptcy Court, unless previously Filed or Allowed, each holder of an Administrative Claim that arose (or, only in the case of unexpired leases or real and personal property, accrued) on or after April 27, 2016 through the Effective Date must File a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 60 days after the Effective Date (the "Final Administrative Bar Date"). Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by 120 days after the Effective Date, subject to further order of the Bankruptcy Court. For the avoidance of doubt, nothing herein modifies any requirement to File any Administrative Claim as set forth in the Bar Date Order, and any holder of such Administrative Claim that failed to comply with the requirements of the Bar Date Order shall be forever barred from asserting such Administrative Claims against the Debtor, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released.

ii. **Bar Dates for Professional Fee Claims**

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must file and submit a final fee application to the Bankruptcy Court and serve on the Debtor and such other Entities who are

designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 90 days after the Effective Date. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Debtor and the requesting party by the later of (1) 80 days after the Effective Date or (2) 30 days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

2. Payment of Priority Tax Claims
   a. Priority Tax Claims in General

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, on the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim, unless otherwise agreed by the holder of an Allowed Claim in Class 3 and the Debtor, each holder of an Allowed Claim in Class 3 shall be satisfied as described in section B. below, in full satisfaction of its Priority Tax Claim.

   b. Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section III.A.2.a., any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the holder for actual pecuniary loss shall be treated as a Class 4.1 Claim, and the holder may not assess or attempt to collect such penalty from the Debtor, the Estates or their respective property.

B. Classified Claims

Class 1 – Secured Tax Claims. Allowed Secured Tax Claims shall be treated as follows:

☐ Each holder of an Allowed Secured Tax Claim shall retain all Liens securing the payment of such Allowed Secured Tax Claim until such Allowed Secured Tax Claim is paid in full.

Each Allowed Secured Tax Claim shall be placed within a separate subclass of this Class 1. Accordingly, each such Class 1 Claim shall, for purposes of accepting or rejecting the Plan and for receiving distributions under the Plan, be treated as though in a separate Class.

☐ The holder of each Allowed Secured Tax Claim shall receive in full satisfaction of an Allowed Secured Tax Claim, on the later of the Effective Date and the date on which the Secured Claim is allowed, at the sole and exclusive option of the Debtor: (a) Cash equal to the amount of such Claim; or (b) in substantially equal 60 monthly Cash payments of the proposed plan earning interest as set by statute, with the entire unpaid balance due at the end of the 60th month of the plan, or at the time the Debtor sells the property which secures the debt, whichever is sooner, beginning on the first day of the first month after the Effective date and continuing on the first day of each succeeding month; or (c) satisfaction of such Claim pursuant to such other terms and conditions as may be agreed upon by the Debtor  and the holder of such Claim.  . Any Allowed Deficiency Claim of a holder of a Secured Tax Claim  shall be entitled to treatment as an Allowed Class 4.1 Claim.

☐ Interest on each Allowed Secured Tax Claim shall accrue as follows:

- for the period beginning on the date any portion of the tax underlying the Allowed Secured Tax Claim became or becomes delinquent under State Law, and to the extent of such delinquency, and continuing through the Effective Date, interest shall accrue at the state statutory rate of one percent (1%) per month in accordance with sections 506(b) and 511 of the Bankruptcy Code; and

- for the period beginning on the day after the Effective Date and continuing through the day on which such Allowed Secured Tax Claim is paid in full, interest shall accrue on the unpaid tax at the state statutory rate of twelve percent (12%) per annum in accordance with sections 511 and 1129 of the Bankruptcy Code.

Ovation Services holds an allowed secured claim in the amount of $29,509.61 and it shall be allowed in full. This claim is secured by a lien on real property at 214 N. Commerce, Harlingen, Texas 78550. This claim shall be paid in full over a period of sixty (60) months (or cash out). Payments shall begin thirty (30) days from the Confirmation Date. Interest at the rate of 14% per annum shall accrue on the entire balance. Ovation Services is entitled to bear interest after April 27, 2016.

Class 2.1 – Other Secured Claims- Not litigated.  Except as specifically provided for below, each Allowed Other Secured Claim – Not litigated shall: (1) on its account, its  holder shall receive in full satisfaction, on the later of the Effective Date and the date on which the Other Secured Claim – Not litigated is allowed - payment in Cash in an amount equivalent to the full amount of the Allowed Claim,  in substantially equal 60 monthly Cash payments of the proposed plan earning interest as set by statute or contract, with the entire unpaid balance due at the end of the 60th month of the plan, beginning on the first day of the first month after the Effective date and continuing on the first day of each succeeding month, or at the time the Debtor sells the property which secures the debt, whichever is sooner.

Any Allowed Deficiency Claim of a holder of a Secured Claim  shall be entitled to treatment as an Allowed Class 4.1 Claim.

Class 2.2 – Other Secured Claims- Crammed Down Treatment (IMPAIRED-ENTITLED TO VOTE).  Except as specifically provided for below, each Allowed Other Secured

Claim – Crammed Down Treatment: (1) on its account, its holder shall receive in full satisfaction, on the later of the Effective Date and the date on which the Other Secured Claim – Crammed Down Treatment is allowed - payment in Cash in an amount equivalent to the full amount of the Allowed Claim, in substantially equal 60 monthly Cash payments of the proposed plan earning 5.5% interest, with the entire unpaid balance due at the end of the 60th month of the plan, beginning on the first day of the first month after the Effective date and continuing on the first day of each succeeding month, or at the time the Debtor sells the property which secures the debt, whichever is sooner.

Excel Finance Company claim no. 19 and Advance America claim no. 23 shall earn interest at 5.5% per annum.

Estimated Recovery:  [100] % of Allowed Claim

Any Allowed Deficiency Claim of a holder of a Secured Claim shall be entitled to treatment as an Allowed Class 4.1 Claim.

Class 2.3 - Other Secured Claims - Litigated

Adolfo Vela's claim no. 2, if allowed, shall be paid in accordance with the terms per the judgment in adversary 16-07010, through 60 equal monthly payments of the proposed plan earning interest as set by statute, with the entire unpaid balance due at the end of the 60th month of the plan and Vela shall retain all of his liens of record as of the petition date. Additionally, upon the sale of any of the properties, if there are remaining proceeds after other priming liens, the debt shall be so satisfied from the remaining net proceeds. Upon payment of Adolfo Vela's claim, if allowed, Vela shall release his lien from all properties of Debtor.

While no determination is made on whether to allow claim 2, the monthly payment shall be deposited into the registry of the Court.

Those claims and related issues that were litigated in Adversary 16-07010 shall be allowed upon the entering of a final non-appealable order in 16-07010 in favor of the claimants as the Court may determine.  However, any claim of Adolfo Vela may be subject to possible allowed amounts judged against the claimant by a final non-appealable order in 16-07010.

Class 2.4 - Other Secured Claims – Ongoing Mortgages

This class covers ongoing mortgages

Federal National Mortgage Association (FNMA):

This debt is over an ongoing mortgage whose term will extend beyond the life of the bankruptcy plan As reflected in FNMA's proof of claim filed herein (Claim No. 9) ("FNMA POC"), FNMA has a claim in the amount of $60,435.70, plus interest that accrues at a rate of 8.250% per annum, late fees, and costs of collection that FNMA has accrued as a result of this bankruptcy proceeding from April 27, 2016, to the Effective Date ("Bankruptcy Pending Period"), less any payments that have been paid to FNMA during the Bankruptcy Pending Period (collectively, "FNMA's Claim"). Repayment of FNMA's Claim is and will remain fully

fully secured in real property <u>collateral</u>, and improvements thereon, described  as "Lot 80, Abbey Heights Subdivision, an addition to the City of Pharr, Hidalgo County, Texas", ("FNMA Collateral") and more specifically described in the Deed of Trust attached to FNMA's POC.

FNMA's Claim herein shall be paid  in accordance with the terms of all loan documentation with FNMA, including but not limited to the loan  documentation attached to FNMA POC.

<u>Class 3 –  Priority Tax Claims.</u>  Each holder of an Allowed Priority Tax Claim shall be paid, on account of such Allowed Priority Tax Claim, the amount of such holder's Allowed Claim in full satisfaction of such Priority Tax Claim.  Each holder of an Allowed Priority Tax Claim shall receive, at the sole and exclusive option of the Debtor:

(a)   On the Effective Date,  cash in an amount equal to such Allowed Priority Tax Claim; (b in substantially equal 60 monthly Cash payments of the proposed plan earning interest as set by statute, with the entire unpaid balance due at the end of the 60th month of the plan, or at the time the Debtor sells property, which results in proceeds left over after payment of all secured creditors and administrative expenses, whichever is sooner<u>,</u> beginning on the first day of the first month after the Effective date and continuing on the first day of each succeeding month;; or (c) satisfaction of such Claim pursuant to such other terms and conditions as may be agreed upon by the Debtor  and the holder of such Claim.

With respect to the Reorganized Debtor electing to pay the Allowed Priority Tax Claim via monthly payments, the priority tax claims shall be fully paid on or prior to the 60th month following the Petition Date in monthly installment payments at 3% APR effective on the first day of the first month after the Initial Distribution.

ADDITIONAL TERMS: Tax Units shall retain all liens, if any,  including those for post-petition taxes, until all allowed taxes, penalties, and interest secured by those liens have been paid.  Should the taxes not be paid, the Tax Units shall be free to pursue all remedies at state law, in order to enforce any tax liens filed properly and collect payment of the delinquent taxes. Provided, however, that the tax liens shall attach to any sale proceeds for any properties that will be sold pursuant to this Plan.

<u>Class 4.1 <u>–</u> General Unsecured Claims</u> (<u>**Impaired**</u>)

<u>Except as specifically provided for below, each holder of an Allowed Claim in Class 4.1 shall receive its pro rata distribution upon the sale of the properties to be transferred to the liquidation trustee, if any, on the effective date when such sale(s) result(s),  in net proceeds after closing costs, remaining after all secured and priority creditors and administrative expenses have already been paid in full.</u>

<u>While no such payments have been made, the Debtor shall pay creditors the allowed amounts via 5 annual payments, with the 1st payment due 365 days from the Effective Date of the Plan and each succeeding payment made 365 days after the prior payment with the last</u>

annual payment paying the remaining balance that is unpaid.

The claims will earn 2% interest.

The Debtor shall open a bank account for the Unsecured payments.

Estimated Recovery:  [0-100] % of filed proof of claim

Class 4.2 – General Unsecured Claims -State Court cases on going (Unimpaired)

Except as specifically provided for below, each holder of an Allowed Claim in Class 4.2 shall receive a *pro rata* distribution, pursuant to the amount determined by the State Court Judge through a final non-appealable order.  If it is necessary to transfer properties to a liquidation trustee for sale, the claimant shall be paid a pro rata payment with proceeds remaining after all secured and priority creditors and administrative expenses have already been paid in full.  While no such sales or associated payments have been made and if all secured, priority and administrative creditors or claimants have been paid in full, the Debtor shall pay creditors the allowed amounts via annual pro rata payments, with the 1st payment due 365 days following the final payment rendering all secured, priority, and administrative creditors or claimants paid in full and each succeeding annual pro rata payment  made 365 days after the prior payment.

Those claims and related issues that were or are being  litigated shall be allowed upon and paid pursuant to the entering of a final non-appealable order as the State Court may determine.

The final non-appealable judgment, if any, ordered by the State Court shall determine the interest rate for the monetary award, if any, to be paid to the claimant.

Class 4.3 Satisfied Claims

With respect to Ford Motor Credit Claim No. 4,  the Debtor surrenders his interest to Ford Motor Credit in full satisfaction of the claimed amount.  The co-buyer will make the monthly payments on the debt.

With respect to the Ovation Services Claim No. 14 such claim has been paid off and will not receive distributions.

Class 4.4 – General Unsecured Claims -Adversary cases on going

Except as specifically provided for below, each holder of an Allowed Claim in Class 4.4, determined by the United States Bankruptcy Court through a final non-appealable order on those claims and related issues that were litigated in Adversary 16-07010 in favor of the claimants, shall receive a  pro rata distribution payment on its award determined by the order of that Court.

Upon the sale of the properties to be transferred to the liquidation trustee on the effective date when such sale(s) result(s), in net proceeds remaining after closing costs, after all secured and priority creditors and administrative expenses have already been paid in full.

While no such payments have been made, the Debtor shall pay creditors the allowed amounts via 5 annual payments, with the 1st payment due 365 days from the Effective Date of the Plan and each succeeding payment made 365 days after the prior payment with the last annual payment paying the remaining balance that is unpaid.

The claimants' claims, if allowed, shall be paid in accordance with the terms per the judgment in adversary 16-07010, through 60 equal monthly payments of the proposed plan earning interest as set by statute, with the entire unpaid balance due at the end of the 60th month of the plan. Additionally, upon the sale of any of the properties, if there are remaining proceeds after other priming liens, the debt shall be so satisfied from the remaining net proceeds, after all closing costs.

While no determination is made on whether to allow these claims, the monthly payment shall be deposited into the registry of the Court.

However, any claims by claimants may be subject to possible allowed amounts judged against the claimants by a final non-appealable order in 16-07010.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

1. **Assumption of Allowed Claims**

As of the Effective Date, Reorganized Debtor assumes the liability for and obligation to perform and make all Distributions or payments on account of all Allowed Claims in the manner provided in the Plan.

2. **Vesting of Assets**

As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets shall be transferred to, and vested in, the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan. Without limiting the generality of the foregoing, all Assets shall vest in the Reorganized Debtor free and clear of any Lien except as expressly provided in the Plan. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any claim without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

3. **Management of the Reorganized Debtor**

*In re Metrocraft Pub. Servs., Inc. (No. 10).*

From and after the Effective Date, without the need for any order of the Court, the Reorganized Debtor's business shall continue to be managed by Jose Marcos Montalvo who shall remain responsible to execute the terms of the Confirmed Plan.

Any changes in the Reorganized Debtor's management shall be governed by applicable governing documents and laws.

**4.      Actions by Debtor and Reorganized Debtor to Implement Plan**

The entry of the Confirmation Order shall constitute authorization for the Debtor and the Reorganized Debtor (as the case may be) to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, <u>including</u> without limitation, any action required by the holders of Interests in the Debtor and the Reorganized Debtor (as the case may be), <u>including</u>, among other things, (i) the adoption or amendment of any organizational documents; (ii) all transfers of Assets that are to occur pursuant to the Plan; (iii) the incurrence of all obligations contemplated by the Plan and the making of all Distributions required under the Plan; (iv) the reinstatement and assumption of any indemnity obligations to the officers, members, managers and/or employees of the Debtor; (v) taking of all actions to preserve and provide for the prosecution of retained causes of action, including but not limited to the Estate Claims; and (vi) entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

The management of the Debtor and the Reorganized Debtor (as the case may be) are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtor and the Reorganized Debtor. Any obligations of the Debtor to indemnify and hold harmless its current and former officers, members, managers and/or employees, whether arising under the Debtor's constituent documents, contract, law or equity, shall be fully reinstated and assumed by the Debtor upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date.

<u>Authority of Debtor</u>

**A.      Functions**

1.      On the Effective Date, the Debtor will determine his procedures (Administrative Procedures) for the purpose of liquidating the Causes of Action, resolving all Disputed Claims, pursuing any and all Claims of the Debtor or its Creditors against any party, if any, and making distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the

Plan.

2.      On  the Effective Date, the Estate Representative shall be authorized to execute the Administrative Procedures and take all necessary steps.

3.      Subject to, and to the extent set forth in, the Plan, the Confirmation Order or other agreement (or any other order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan), the Debtor will be empowered to take the following actions, and any other actions, as the Debtor determines to be necessary or appropriate to implement the Plan, all without further order of the Bankruptcy Court:

    i.      adopt, execute, deliver or file all plans, agreements, certificates and other documents and instruments necessary or appropriate to implement the Plan;

ii. accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Causes of Action and the assets and properties of the Debtor;

iii. sell, liquidate or otherwise dispose of the Causes of Action and other Debtor Assets and the assets and properties of the Debtor;

iv. calculate and make distributions to holders of Allowed Claims;

v. exercise rights and fulfill obligations under the Plan;

vi. implement the Sale Orders;

vii. review, reconcile, settle or object to Claims and resolve such objections;

viii. retain Third Party Disbursing Agents and professionals and other Entities;

ix. file appropriate Tax returns and other reports on behalf of the Debtor and pay Taxes or other obligations owed by the Debtor;

x. close or dismiss any or all of the Bankruptcy Cases; and

xi. the investment of Cash within certain limitations;

4.      The Debtor will conduct its activities consistent with the Plan.

5.      Jose Marcos Montalvo will be the "representative" of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, and, as such, the Debtor maintains all of the rights, powers and obligations of a trustee in bankruptcy with respect to collecting, maintaining, administering and liquidating any assets.

5.        **Continued Existence of the Debtor**

The Debtor shall continue to exist, as Reorganized Debtor, after the Effective Date as a separate entity, with all the powers available to such legal entities, in accordance with applicable law and pursuant to its constituent documents. On or after the Effective Date, the Reorganized Debtor may, within its sole and exclusive discretion, take such action as permitted by applicable law and its constituent documents as it determines is reasonable and appropriate.

6.        **Source of Funding for Operations and Plan Obligations**

*In re Metrocraft Pub. Servs., Inc. (No. 14).*

The operation of the Reorganized Debtor's business and the Distributions to be made by the Reorganized Debtor under the Plan shall be funded from the operation of the real property rental business of the Debtor, Debtor's personal earnings, as well as by the sale of assets and revenue from payments related to the debt on previously sold properties.

    **A.  Sale of Debtor's properties on a need basis.**

      1.   For the scenario in which a large monetary judgments are ordered against Debtor in adversary 16-07010 or the *Guerra vs. Montalvo* litigation and such judgments become final and non-appealable, making the confirmation of a reorganization plan infeasible or making the confirmed plan become infeasible, the Debtor, through a real estate broker either appointed or authorized by the Court to be a liquidating trustee, shall sell or otherwise dispose of sufficient properties and other properties, to discharge its obligations and liabilities as to unsecured debt, secured debt, tax arrears on Debtor's properties and also to discharge its obligations and liabilities that may be ordered following the trial of Adversary case 16-07010, stemming from the claims of TCPSP Corporation and/or Adolfo Vela, and the Guerra vs. Montalvo litigation,  pursuant to all such terms as the Debtor determines to be necessary or appropriate to implement the Plan and all without further orders of the Bankruptcy Court.

      2.   For the avoidance of doubt, on and after the Effective Date, the Debtor may, without further order of the Bankruptcy Court, ~~the~~ transfer any or all of its assets and properties as appropriate to implement the Plan.

  B.  Continued Operation on Debtor's Business.

At the current time, the Debtor generates monthly rental income of approximately $1,250.00 from his tenants. This is a historical number. In addition, Debtor receives $961.00 in revenue from past sales of real estate under contract, which Debtor will receive for approximately the next 10 years from the purchasers.  Debtor has been receiving payments from the purchasers for the most part on time with no real problems in collections for the 4 to 5 years that the Debtor has been receiving payments.

Additionally, the Debtor anticipates receiving about $2,000 in net monthly income from leasing/.renting space at 214 N. Commerce Harlingen, Texas with such income increasing as Debtor leases out divisible rental space.

Furthermore, the Debtor anticipates owner financing the sale of 2 lots in Raymondville, Texas which will generate approximately $241 in monthly revenue. Debtor has discussed the sale of these lots with several potential purchasers and such purchasers were not concerned with the price considering the location and the valuations of the local ad valorem taxing authorities.

The Debtor also supervises roofing and construction work whose past/historical average income and expenses are listed in Exhibit 9 under "Other" section.

Please refer to paragraph C for anticipated income and expenses during the period of the confirmed plan,  which are based on the personal knowledge of the Debtor from having conducted his business over a period of more than 10 years and from rental offers made on his properties

C.   Financial Projections.

Exhibit 9 reflects the cash flow over a 5 year period for Debtor's real properties. For each 12 month period, the exhibit lists the current income and current expenses from the rentals, sales income, and roofing and construction ("Other").  These figures are all actual figures computed on an average monthly basis using the numbers from the Monthly Operating Reports since the inception of Debtor's Chapter 11 bankruptcy.

The next section depicts payments made to Secured Tax Creditors for ongoing regular real property tax payments, ("Current"), followed by prepetition tax debt payments to be made under the plan, ("Arrears").

D.     Money in Registry of Court. The Debtor also has approximately $2,600.00 in the registry of the Court from his Chapter 13 proceedings.  The Debtor will request that the Court release this money so that he may use it to complete the remodeling of the 214 N. Commerce property.

E.     Financing.  The Debtor, if necessary, has negotiated the financing (approximately $5,000.00 at 0% up to 24 months, thereafter at 4% annual interest) for the central air-conditioning units for the 214 N. Commerce property already to be installed after approval of the Debtor's Disclosure statement, with Court permission.

F.     Bank Deposits.  Debtor has $2,000 in his bank account  to complete the remodeling of the 214 N. Commerce property.


**7.     Retention and Assertion of Causes of Action and Defenses**

Except as expressly set forth in this Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtor shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the respective Reorganized Debtor for the benefit of the Debtor and the Debtor's estate. Except as expressly set forth in this Plan, the rights of the Reorganized Debtor to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against them. The Debtor and its estate expressly reserve all rights to prosecute any and all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) against any Person, <u>except</u> as otherwise provided in this Plan.** Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Final Order, the Debtor expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. The Debtor and the Reorganized Debtor may also assert Estate Defenses as a defense to the allowance of any Claim not otherwise Allowed.

On the Effective Date, all Causes of Action will be retained by the Debtor. A nonexclusive schedule of currently pending actions and claims brought by Debtor is attached as <u>Exhibit V</u>. In accordance with and subject to any applicable law, the Debtor's inclusion or failure to include any Cause of Action on <u>Exhibit V</u> shall not be deemed an admission, denial or waiver of any Cause of Action that any Debtor or Estate may hold against any Entity.

On the Effective Date, all rights to pursue and litigate potential Avoidable Transfers will be retained by the Debtor. All potential Avoidable Transfers shall be considered included in the Causes of Action transferred. See Exhibit V.

### 8.      Post-Confirmation Reporting

After the Effective Date, the Debtor will File unaudited reports of its activities and the financial affairs of the Debtor with the Bankruptcy Court on a quarterly basis, within 30 days after the conclusion of each such quarterly period until the earlier of the entry of a final decree closing each of the Bankruptcy Cases or a Bankruptcy Court order converting or dismissing each of the Bankruptcy Cases. Such filed unaudited quarterly reports will contain information regarding the liquidation of the Causes of Action and the assets and properties of the Debtor, the distributions made and other matters required to be included in such reports in accordance with the Plan and any applicable Bankruptcy Court and United States Trustee guidelines for such matters.

### 9.      Expenses of the Debtor.

The Debtor may, without further order of the Bankruptcy Court, retain Third Party Disbursing Agents, professionals or other Entities to assist in carrying out its duties hereunder and may

compensate and reimburse the expenses of these professionals or other Entities without further order of the Bankruptcy Court from the assets and properties of the Debtor in accordance with the Plan.

### 10. Tax Treatment.

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes. For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss. This will depend on the holder's own tax characteristics and cannot be assured. Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.

The debtor may also have a federal income tax effect from the plan. To the extent that indebtedness is discharged, the debtor may have a basis adjustment in his assets. Moreover, any sale of assets may produce taxable income. The forecasts set forth above incorporate the debtor's best estimate of the federal income tax effect of the plan.

### 11. Revesting of Assets of the Estate.

On the Effective Date, the assets of the estate shall revest in the Reorganized Debtor, with all prepetition liens remaining attached for supporting debts, under and subject to the terms of the Plan.

### 12. Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

### 13. Preservation of Causes of Action; Settlement of Claims and Releases

#### A. Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against any Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor expressly reserve such Causes of Action, which Causes of Action include the Avoidance Actions, for possible adjudication, and therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppels, issue preclusion, claim preclusion, waiver, estoppels (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Causes of Action have been released in the Plan or any Final Order (including the Confirmation Order).

In addition, the Debtor reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including

the plaintiffs or co-defendants in such lawsuits. For the avoidance of doubt, Causes of Action include all avoidable transfers.

The decision of whether or not to pursue any claim or litigation at all or to compromise Claims once they have been asserted shall be made by the Estate Representative in accordance with the provisions of the Plan.

Avoidance Actions

The Debtor is empowered to pursue the estate's avoidance or fraudulent transfer claims. The Debtor is entitled to retain professionals as necessary for this purpose. Expenses and fees for pursuing such claims by the Debtor will be paid by the Debtor, subject to all rules and restrictions therein, upon submission of bills from professionals in the same manner as payments to Trust professionals.

The Debtor has until twelve months after the Effective Date, to file any such avoidance or fraudulent transfer claims or they are forever barred. This provision does not extend any of the applicable statutes of limitations for such claim s, i.e., if the Debtor does not timely pursue any claim prior to the running of a limitations statute the deadline is not extended.

### B.   Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, its Estates and Claim and Interest holders and is fair, equitable and reasonable.

### 14.   Limitations on Liability

The Debtor and her respective agents and professionals, in each case acting in such capacity, will neither have nor incur any liability to any Entity for any act taken or omitted to be taken on or after the commencement of the Bankruptcy Cases, including the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Bankruptcy Cases or any of the foregoing; provided, however, that the foregoing provisions will have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### 15.   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VI of the Plan, all Liens against the property of any Estate will be fully released and discharged, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall revert to the applicable Estate.

**16.     Effectuating Documents; Further Transactions; Exemption From Certain Transfer Taxes**

The Debtor or its designee will be authorized to (a) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (b) certify or attest to any of the foregoing actions. Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, sales and use tax or similar tax: (a) the execution and implementation of the Plan, including any transfer of assets or properties to or by the Debtor; or (b) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any plan or agreement adopted or executed in connection with any transaction pursuant to the Plan.

**17.     Determination of Reserve Amount**

The Debtor requests that the Bankruptcy Court determine the Reserve Amount at the Confirmation Hearing, if necessary.

**18.     Cramdown**

The Debtor requests Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.      Executory Contracts and Unexpired Leases to Be Rejected

On the Effective Date, except for (a) the Executory Contracts and Unexpired Leases listed on Exhibit VI or (b) to the extent that a Debtor either previously has assumed and assigned or rejected an Executory Contract or Unexpired Lease by an order of the Bankruptcy Court or has filed a motion to assume or assume and assign an Executory Contract or Unexpired Lease prior to the Effective Date, each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to section 365 of the Bankruptcy Code. Each contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Notwithstanding the foregoing, nothing in <u>Section V of the Plan</u> shall cause the rejection (if such contract is an Executory Contract or

Unexpired Lease for purposes of section 365), breach or termination of any contract of insurance benefiting the Debtor, the Estate. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

B.      Bar Date for Rejection Claims

        Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection claim will be forever barred and will not be enforceable against the Debtor, the Reorganized Debtor or the estate of the Debtor unless a proof of Claim is Filed and served on the Debtor, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, by (a) for Executory Contracts and Unexpired Leases rejected on the Effective Date, 30 days after the Effective Date pursuant to Section V.C.2.

C.      Executory Contracts to Be Assumed and Assigned or Rejected

        1.  Assumption Generally

        Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Liquidating Debtor shall assume each of the respective Executory Contracts and Unexpired Leases listed on Exhibit VI; provided, however, that the Debtor reserves the right, at any time prior to the Effective Date, to amend Exhibit VI to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its rejection pursuant hereto on the Effective Date; or (b) add any Executory Contract or Unexpired Lease to Exhibit VI, thus providing for its assumption pursuant to Section V.C.1. of the Plan on the Effective Date. The Debtor shall provide notice of any amendments to Exhibit VI to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Bankruptcy Cases. Nothing herein shall constitute an admission by a Debtor that any contract or lease is an Executory Contract or Unexpired Lease or that a Debtor has any liability thereunder.

        2.  Assumption and Assignment of Executory Contracts and Unexpired Leases

        Each Executory Contract and Unexpired Lease assumed under Sections V.C.1 shall include any modifications, amendments, supplements or restatements to such contract or lease.

        3.  Approval of Procedures

        The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions or assumption and assignments or rejections described in Sections V.C.1, pursuant to section 365 of the Bankruptcy Code. The procedures for such assumption or assumption and assignment of an Executory Contract or Unexpired Lease are as follows:

        a. After the entry of the Confirmation Order, the Debtor shall serve upon each party to an Executory Contractor or Unexpired Lease being assumed or assumed and assigned

or rejected notice of: (i) the contract or lease being assumed or assumed and assigned or rejected; (ii) the Cure Amount Claim, if any, that the  Debtor believes would be necessary to pay in connection with such assumption; and (iii) the procedures for such party to object to the assumption or assumption and assignment or rejection of the applicable contract or the amount of the proposed Cure Amount Claim.

b.   Any Entity wishing to object to (i) the proposed assumption or assumption and assignment or rejection described in <u>Sections V.C.1</u> or (ii) the proposed amount of the related Cure Amount Claim must File and serve on the Debtor a written objection setting forth the basis for the objection within 20 days of service of the notice described in <u>Section V.C.3.a.</u>

c. If no objection to the proposed assumption or assumption and assignment or rejection or Cure Amount Claim is properly Filed and served prior to the objection deadline: (i) the proposed assumption and assignment or rejection of the applicable Executory Contracts or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the date of notice described in <u>Section V.C.3.a.</u>, without further action of the Bankruptcy Court; and (ii) the Cure Amount Claim identified by the Debtor in the notice shall be fixed and shall be promptly paid thereafter, without further action of the Bankruptcy Court, to the appropriate contract or lease party identified on the notice.

d. If an objection to the proposed assumption and assignment or rejection or Cure Amount Claim is properly Filed and served prior to the objection deadline, the Debtor and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

e. If an objection to the proposed assumption and assignment or rejection or Cure Amount Claim is properly Filed and served prior to the objection deadline and the parties are unable to resolve such objection, the Debtor may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time.

D.     Payments Related to the Assumption of Executory Contracts and Unexpired Leases

To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code: (1) by payment of the Cure Amount Claim in Cash; or (2) on such other terms as are agreed to by the parties to such Executory Contract and Unexpired Lease. Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is a dispute regarding: (1) the amount of any Cure Amount Claim; (2) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the

Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.     Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (1) 60 days after the Effective Date; or (2) such later date when the applicable conditions of Section V.C. of the Plan (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Section VI.D.2. of the Plan (regarding undeliverable Distributions) or Section VI.G.3. of the Plan (regarding compliance with Tax requirements) are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Section VI.G.1. of the Plan. Any Claim that is disallowed by order of the Bankruptcy Court prior to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the holder of any such Claim shall not be entitled to any Distribution under the Plan.

**B.     Method of Distributions to Holders of Claims**

The Debtor will make all distributions of Cash required under the Plan to holders of Allowed Claims. The Debtor may retain or contract with other entities to assist in or make the distributions required by the Plan.

**C.     Compensation and Reimbursement for Services Related to Distributions**

**1.     Compensation and Reimbursement**

The Debtor will receive, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments will not be deducted from Distributions (including any distributions of Cash Investment Yield) to be made pursuant to the Plan to holders of Allowed Claims receiving Distributions from the Debtor.

**2.     Investment of Cash Related to Distributions**

The Debtor will invest the Cash in accordance with the Debtor's investment and deposit guidelines; provided, however, that should the Debtor determine, in his or her sole discretion, that the administrative costs associated with such investment will exceed the return on such investment, he may determine not to invest such Cash. Distributions of Cash from accounts held by Debtor will include a Pro Rata share of the Cash Investment Yield, if any, from such investment of Cash.

**D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1. **Delivery of Distributions to Holders of Allowed Claims**

Distributions to holders of Allowed Claims will be made by the Debtor (a) at the addresses set forth on the respective proofs of Claim, requests for payment of Administrative Claim or similar document Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Debtor  (including pursuant to a letter of transmittal delivered to a Debtor) after the date of Filing of any related proof of Claim, requests for payment of Administrative Claim or similar document; or (c) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Debtor has not received a written notice of a change of address.

2. **Undeliverable Distributions Held by Disbursing Agents**

   **a. Holding and Investment of Undeliverable Distributions**

Subject to Section VI.D.2.c. of the Plan, if any Distribution to a holder of an Allowed Claim is returned to the Debtor as undeliverable, no further Distributions shall be made to such holder unless and until the Debtor  is notified by written certification of such holder's current address and such Undeliverable Distributions shall remain in the possession of the Debtor pursuant to Section VI.D.2.a. of the Plan for the benefit of such claimants until such time as a Distribution becomes deliverable.

   **b. After Distributions Become Deliverable**

On each Quarterly Distribution Date, the Debtor will make all Distributions that were undeliverable but that have become deliverable to holders of Allowed Claims during the preceding calendar quarter.

   **c. Failure to Claim Undeliverable Distributions**

Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable Distribution to be made by the Debtor within 180 days after the later of (i) the Effective Date and (ii) the last date on which a Distribution was deliverable to such holder will have its claim for such undeliverable Distribution deemed satisfied, waived and released and will be forever barred from asserting any such claim against the Debtor and their respective property. In such cases, unclaimed Distributions will be maintained for redistribution to other claimants entitled to Distributions under the Plan. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

E. **Distribution Record Date**

1. **No Recognition of Transfers after the Distribution Record Date**

The Debtor shall have no obligation to recognize the transfer of, or the sale of any participation in, any Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to

those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

>       **2.      Treatment of Certain Transfers**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

**F.      Means of Cash Payments**

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims shall be in U.S. currency by checks drawn on a domestic bank selected by the Debtor, or, at the option of the Debtor, by wire transfer from a domestic bank; provided, however, that cash payments to foreign holders of  Allowed Claims may be made, at the option of the Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**G.      Timing and Calculation of Amounts to Be Distributed**

>       **1.      Allowed Claims**

Each holder of an Allowed Claim shall receive the full amount of the Distributions that the Plan's treatment provides for Allowed Claims in the applicable Class pursuant to the terms and conditions of the Plan. With respect to Disputed Claims, on each Quarterly Distribution Date, Distributions also shall be made pursuant to Section VII.C. of the Plan to holders of Disputed Claims in any such Class that were allowed during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the Debtor. Such quarterly Distributions shall be in the full amount of the accrued payments that the Plan provides for Allowed Claims in the applicable Class.

>       **2.      De Minimis Distributions**

The Debtor shall not distribute cash to the holder of an Allowed Claim in an impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50 in the aggregate. Any Cash not distributed pursuant to Section V.G.2. of the Plan will be the property of the Debtor.

>       **3.      Compliance with Tax Requirements**

>       **a. Withholding and Reporting**

In connection with the Plan, to the extent applicable, the Debtor shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision of the Plan to the contrary, the Debtor shall be

authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including applying a portion of any Cash Distribution to be made under the Plan to pay applicable Tax withholding, requiring Claim holders to submit appropriate certifications or establishing other mechanisms the Debtor believes are reasonable and appropriate. To the extent that any Claim holder fails to submit appropriate certifications required by the Debtor or to comply with any other mechanism established by the Debtor to comply with Tax withholding requirements, such Claim holder's Distribution may, in the Debtor's  reasonable discretion, be deemed undeliverable and subject to <u>Section V.D.2.</u> of the Plan.

### b. Backup Withholding

Without limiting the generality of the foregoing, in accordance with the Internal Revenue Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless the holder (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides at the Debtor's request a completed IRS Form W-9 (or substitute therefor) on which the holder includes a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Among other things, to receive any post-petition interest, if requested by the Debtor, a holder of an Allowed Claim shall be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding. Non-U.S. Allowed Claim holders may be required by the Debtor to provide a completed IRS Form W-8BEN or W-8BEN-E, as applicable (or other applicable Form W-8 or successor form), to establish an exemption from or a treaty-reduced rate of withholding on interest distributed pursuant to the Plan. Unless the Debtor, in her discretion, determines otherwise, no Distributions on account of post-petition interest shall be made to a holder of an Allowed Claim until such time as the holder of such Claim establishes exemption from withholding or provides the applicable IRS Form.

### c. Obligations of Distribution Recipients

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other Tax obligations.

### 4.    Compliance with Domestic Relations Orders

In connection with the Plan, the Debtor may allocate and make Distributions in compliance with applicable wage garnishment, alimony, child support and similar domestic relations orders.

### H.    Setoffs

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with

the Plan, the Debtor, pursuant to section 553 of the Bankruptcy Code or or other applicable bankruptcy or  nonbankruptcy law, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the Causes of Action of any nature against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor of any Causes of Action that the Debtor may possess against such a Claim holder.

**I.      Allocation of Payments**

Amounts paid to holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess being allocated to accrued but unpaid interest on such Claims.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**A.      Prosecution of Objections to Claims**

**1.      Objections to Claims**

All objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Bar Date; provided, however, the objection deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Reorganized Debtor may seek to extend the objection deadline pursuant to a motion filed on or before the then applicable objection deadline with respect to any Claims. Any such motion may be granted without notice or a hearing. In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the objection deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim filed more than sixty (60) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor. Nothing contained herein shall limit the rights of the Reorganized Debtor to object to Claims, if any, filed or amended after the objection deadline., and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Bankruptcy Cases. If an objection has not been Filed to a proof of Claim or request for payment of Administrative Claim by the applicable Claims Objection Bar Date, the Claim to which the proof of Claim or request for payment of Administrative Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

**2.      Authority to Prosecute Objections**

After the Confirmation Date, only the Debtor will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. After the Confirmation Date, the Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  without the necessity of any further notice or approval of

the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Confirmation Date.

**B.      Treatment of Disputed Claims**

**1.      No Payments on Account of Disputed Claims and Disputed Claims Reserves**
Notwithstanding any other provisions of the Plan, no payments or Distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim will be governed by the Plan. In addition, the Plan shall include reasonable and customary provisions establishing reserves to account for Disputed Claims that may become Allowed Claims.

**2.      Recourse**
Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed Cash held by the Debtor for the satisfaction of such Allowed Claim and not any assets previously distributed on account of any Allowed Claim.

**C.      Distributions on Account of Disputed Claims Once Allowed**

On each Quarterly Distribution Date, the Debtor shall make all Distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent. Such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

D.      <u>No Waiver of Rights to Object</u>. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, the Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Reorganized Debtor's rights to object to any Claim.

E.      <u>Rights Under Section 505</u>. The Reorganized Debtor shall retain all rights pursuant to section 505 of the Bankruptcy Code.

F.      <u>Liquidating and Allowance of Contested or Disputed Claims</u>

(a)      Nothing contained in the Plan, Disclosure Statement or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Contested Claim must file a timely proof of Claim, and the Claim of any such Creditor who is required to file a proof of Claim and fails to do so shall be discharged and shall receive no Distribution through the Plan. The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship, and is, therefore, an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim. Exclusive venue for any Contested Claim proceeding shall be in the Bankruptcy Court or a court of competent jurisdiction located in Harris County, Texas. Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested Claim proceeding. The Reorganized Debtor shall retain all rights of removal to federal court as to any Contested Claim proceeding.

(b)     All Contested Claims shall be liquidated and determined as follows:

(i)     <u>Application of Adversary Proceeding Rules</u>. Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any Objection to a Contested Claim shall be treated as a contested proceeding subject to Bankruptcy Rule 9014. However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection. The Reorganized Debtor may, however, at its election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(ii)     <u>Scheduling Order</u>. With respect to an Objection to a Claim treated as a contested proceeding subject to Bankruptcy Rule 9014, the Reorganized Debtor may request entry of a scheduling order as to each Objection to a Claim. The Reorganized Debtor may tender a proposed scheduling order with each Objection and/or include a request for a scheduling conference for the entry of a scheduling order. Any such scheduling order may include (i) discovery cut-off, (ii) deadlines to amend pleadings, (iii) deadlines for designation of and objections to experts, (iv) deadlines to exchange exhibit and witness lists and for objections to the same, and (v) such other matters as may be appropriate.

G.     <u>Offsets and Defenses</u>. The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Reorganized Debtor against any Claimants shall constitute "core" proceedings.

H.     <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Reorganized Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.     Conditions to Confirmation
The following shall be conditions to Confirmation unless such conditions shall have been duly waived:
1. The Confirmation Order shall have been entered by the Bankruptcy Court and shall be reasonably acceptable in form and substance to the Debtor.
2. The Plan will not have been materially amended, altered or modified from the Plan as Filed on May 31, 2018 except as permitted by Section X.
3. All Plan Exhibits are in form and substance reasonably satisfactory to the Debtor.

B.     Conditions to the Effective Date
The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section VIII.C:

1. The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) in form and substance reasonably acceptable to the Debtor approving and authorizing the Debtor to take all actions necessary or appropriate to effectuate, implement and consummate the Plan, including the execution, delivery and performance of contracts, instruments, releases and other agreements or documents created in connection with the Plan.
2. The Confirmation Order has become a Final Order.

C.      Waiver of Conditions to Confirmation or the Effective Date
        The conditions to Confirmation set forth in Section VIII.A. and the conditions to the Effective Date set forth in Section VIII.B. may be waived in whole or part in writing by the Debtor at any time without an order of the Bankruptcy Court. Confirmation and the Effective Date will occur irrespective of whether any claims allowance process or related litigation has been completed.

D.      Effect of Nonoccurrence of Conditions to the Effective Date
        If each of the conditions to the Effective Date is not satisfied in accordance with VIII.B. or duly waived in accordance with Section VIII.C. then upon motion by the Debtor made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated, (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the

## ARTICLE IX.
## INJUNCTION AND SUBORDINATION RIGHTS

A.      Injunction

        Except as provided in the Plan or the Confirmation Order and other than with respect to a right of recoupment or a setoff, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability subject to the Plan or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions in respect of any such Claims, debts, liabilities, Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, other than to enforce any right pursuant to the Plan to a Distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or their respective property; (d) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

B.      Subordination Rights

        The classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights, and nothing in the Plan or Confirmation Order

shall affect any subordination rights that a holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, Pursuant to sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

1.      Allow, disallow, determine, liquidate, classify, reclassify, estimate or establish the priority, secured or unsecured status (or proper Plan classification) of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense or Claim and the resolution of any objections to the allowance, priority or classification of Claims or Interests;

2.      To hear and determine any and all applications for payments of fees and expenses from the Reorganized Debtor's estate made by attorneys or any other Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed from the Reorganized Debtor's estate under the Bankruptcy Code, and any and all objections thereto;

3.      Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including the Causes of Action, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or brought thereafter;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan or the Confirmation Order;

7.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Causes of Action or the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

8.     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code;

9.     Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

10.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

11.    Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order;

12.    Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

13.    Enter a final decree closing the Debtor's Bankruptcy Case;

14.    Hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, including hearing all Valuation Motions, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of Objections to Contested Claims;

15.    To liquidate and administer any disputed, contingent, or unliquidated Claims, including the allowance of all Contested Claims;

16.    To administer Distributions to holders of Allowed Claims as provided herein;

17.    To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

18.    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including without limitation, the Confirmation Order;

19.    To enforce the discharge and injunction described in the Plan and the Confirmation Order;

20.    To the extent necessary, to approve the sale after the Effective Date of any of the Assets free and clear of all Liens, claims and interests by the Reorganized Debtor;

21.     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions required or contemplated pursuant hereto;

22.     To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan;

Abstention and Other Courts. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Case, the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Non-Material Modifications. The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Reorganized Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

Material Modifications. Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

Revocation. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date in accordance with the provisions of the Bankruptcy Code. If the Plan is revoked or withdrawn, or for any other reason not confirmed, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the right of the Debtor or any other Person in any further proceedings involving the Debtor.

Effect of Withdrawal or Revocation. If the Debtor revokes or withdraws this Plan, or if the conditions to the Effective Date do not occur within sixty (60) days after the Confirmation Date, then the Plan shall be deemed null and void and shall not be binding on the Debtor or any other Person.

## ARTICLE XI.
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**A. General**

A description of the United States federal income tax consequences of the Plan is provided below. This description is based on the Internal Revenue Code, Treasury Regulations issued thereunder, judicial decisions and Internal Revenue Service and administrative determinations, all as in effect on the date of this disclosure statement and all subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No  ruling has been requested from the Internal Revenue Service; no opinion has been requested from Debtors' counsel concerning any tax consequence of the Plan; and no tax opinion is given by this disclosure statement.

The description that follows does not cover all aspects of United States federal income taxation that may be relevant to the Debtor or holders of Claims. For example, the description does not address issues of special concern to certain types of taxpayers, such as dealers in securities, life insurance companies, financial institutions, tax exempt organizations and non-U.S. taxpayers nor does it address tax consequences to holders of Equity Interests in the Debtors. In addition, the description does not discuss state, local or non-U.S. tax consequences. For these reasons, the description that follows is not a substitute for careful tax planning and professional tax advice based upon the individual circumstances of each holder of a Claim or Interest. Holders of Claims or Equity Interests are urged to consult with their own tax advisors regarding the federal, state, local and non-U.S. tax consequences of the Plan.

**B. United States Federal Income Tax Consequences of Payment of Allowed Claims Pursuant to Plan**

The United States federal income tax consequences of Plan implementation to the holders of Allowed Claims will depend on, among other things, the consideration to be received by the holder, whether the holder reports income on the accrual or cash method, whether the holder receives distributions under the Plan in more than one taxable year, whether the holder's claim is allowed or disputed at the Effective Date, and whether the holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

**1. Recognition of Gain or Loss**

**a. In General**

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the holder's basis in the Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitation. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The holder's amount realized generally will equal the sum of the Cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date or subsequent distribution date, less the amount (if any) allocable to Claims for interest, as discussed below.

### b. Post-Effective Date Cash Distributions

Because certain holders of Allowed Claims, including Disputed Claims that ultimately become Allowed Claims, may receive Cash distributions subsequent to the Effective Date of the Plan, the imputed interest provisions of the Internal Revenue Code may apply to treat a portion of the subsequent distributions as imputed interest. Additionally, because holders may receive distributions with respect to an Allowed Claim in a taxable year or years following the year of the initial distribution, any loss and a portion of any gain realized by the holder may be deferred. All holders of Allowed Claims are urged to consult their tax advisors regarding the possible application of (or ability to elect out of) the "installment method" of reporting with respect to their claims.

### c. Bad Debt and/or Worthless Securities Deduction

A holder who, under the Plan, receives in respect of a Claim an amount less than the holder's tax basis in the claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under § 166(a) of the Internal Revenue Code or a worthless securities deduction under § 165(g) of the Internal Revenue Code. The rules governing the character, timing and amount of bad debt or worthless securities deductions place considerable emphasis on the facts and circumstances of the holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

### 2. Pending Payments

Cash payment after the Effective Date should be deemed to have been paid to the holder of the Claim entitled to receive such payment on the date that the creditor received it. Thus, the holder should recognize gain or loss based upon the amount deemed received.

### 3. Payments Other than Pending Payments

If any payment other than a Pending Payment is to be made, such payment will not be deemed to have been made to any recipient until, and to the extent that, the amount to which the payee is entitled has been determined and distributed. Any income realized by the Debtor prior to such time will be reported by the Debtor as income of and taxable to the Debtor.

### C. Certain Other Tax Consequences for Holders of Claims

### 1. Receipt of Pre-Effective Date Interest

In general, a Claim holder that was not previously required to include in its taxable income any accrued but unpaid pre-Effective Date interest on the Claim may be required to take such amount into income as taxable interest. A Claim holder that was previously required to include in its taxable income any accrued but unpaid pre-Effective Date interest on the Claim may be entitled to recognize a deductible loss to the extent that such interest is not satisfied under the Plan. The Plan provides that all Distributions to a holder of an Allowed Class 2 Claim will be deemed to apply first to the principal amount of such Claim until such principal amount is paid in full, and then the remaining portion of such distributions, if any, will be deemed to apply to any prepetition accrued interest included in such Claim. There is no assurance, however, that the Internal Revenue Service will respect this treatment and will not determine that all or a portion of amounts distributed to holders of Allowed Class 2 Claims is properly allocable to prepetition interest. Each such holder is urged to consult its tax advisor

regarding the tax treatment of its distributions under the Plan and the deductibility of any accrued but unpaid interest for federal income tax purposes.

### 2. Installment Method

A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of § 453B of the Internal Revenue Code.

### 3. Information Reporting and Withholding

Under the Internal Revenue Code's backup withholding rules, the holder of an Allowed Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan unless the holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact, or provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax. Holders of Allowed Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### 4. Importance of Obtaining Professional Tax Assistance

**The foregoing discussion is intended only as a summary of certain U.S. Federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. Accordingly, holders are urged to consult with their tax advisors about federal, state, local and non-U.S. tax consequences to the Plan.**

### G.   Certain Other Tax Consequences for Debtors.

**Debtor's proposed execution of his plan primarily relies on running his business and therefore, he projects not having to file complicated tax returns on his normal business operations.  Only in the event that the Debtor determines that his exposure to liability requires selling properties, will Debtor seek the advice of a tax professional to undertake an analysis into computing capital gains taxes on the difference between the proposed sale price and the valuation basis of the asset sold.  Assuming that there is a margin there, then the tax professional shall compute the applicable capital gains tax based on the Debtor's tax rate and whether the asset was held for less than a year or more than a year.  Debtor believes that his maximum exposure is $5,500.00 on the sale of the 10 acre tract and possibly it may be zero.  Debtor does not anticipate selling any other tract.**

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

12.01.   Severability. Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized

Debtor may modify the Plan so that such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

12.02.  <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan, Disclosure Statement and Confirmation Order may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. The Plan may only be modified, amended or supplemented in writing signed by an authorized representative of the Debtor or an authorized representative of the Reorganized Debtor. Neither the Debtor nor its attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Court.

12.03.  <u>Waiver</u>. The Reorganized Debtor shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by an authorized representative of the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

12.04.  <u>Construction</u>. The Plan shall control over any inconsistent term of the Disclosure Statement. The Confirmation Order shall control over any inconsistent provision of the Plan.

12.05.  <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)  If to a Creditor, notice may be given as follows:  (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to address reflected in the proof of claim.

(b)  If to the Reorganized Debtor, notice shall be sent to the following addresses:
Jose Marcos Montalvo
1311 Helmer St.
Pharr, Texas 78577

Concurrently with service of such notice on the Reorganized Debtor, a copy thereof shall be served in the same manner on the following legal counsel:

Antonio Martinez, Jr.
The Law Office of Antonio Martinez, Jr., P.C.
317 West Nolana Ave., Suite C
McAllen, Texas 78504
martinez.tony.jr@gmail.com
956-683-1090

(c)  Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

12.06.   <u>Compliance with All Applicable Laws</u>. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; <u>provided</u>, <u>however</u>, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Reorganized Debtor.

12.07.   <u>Duties to Creditors</u>. No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Chapter 11 Case, including all matters or actions in connection with or relating to the administration of the estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

12.08.   <u>Binding Effect</u>. The Plan shall be binding upon, and shall inure to the benefit of the Reorganized Debtor, the holders of the Claims or Liens, the holders of Interests, and their respective successors in interest and assigns.

12.09.   <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

12.10.   <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on or before the Effective Date, and thereafter shall be paid by the Reorganized Debtor as such statutory fees become due.

12.11.   <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.12.   <u>Computation of Time</u>. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

12.13.   <u>Elections by the Reorganized Debtor</u>. Any right of election or choice granted to the

Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor, or Person.

12.14.  Release of Liens. Except as otherwise provided in this Plan or the Confirmation Order, all Liens against any of the Assets shall be deemed to be released, terminated, and nullified.

12.15.  Rates. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

12.17.  Compliance with Tax Requirements. In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

12.18.  Notice of Entry of Confirmation Order. Promptly after entry of the Confirmation Order, the Debtor, as directed by the Bankruptcy Court, shall serve on all known parties in interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

12.19.  Notice of Occurrence of the Effective Date. Promptly after occurrence of the Effective Date, the Reorganized Debtor, as directed by the Bankruptcy Court, shall serve on all known parties in interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

12.20.  Interest and Attorney's Fees

(a)     Interest accrued after the Petition Date will accrue and be paid on Allowed Claims only to the extent specifically provided for in the Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.

(b)     Except as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorney's fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

12.21.  **No Admissions. As to contested matters, adversary proceedings and other causes of action or threatened causes of action, the Plan shall not constitute or be construed as an admission by the Debtor or the Reorganized Debtor of any fact or liability, stipulation, or waiver, but shall constitute and be construed as a statement made in settlement negotiations. The Plan shall not be construed to be conclusive advice on  the tax, securities, and other legal effects of the Plan as to holders of Claims against, or Interests in, the Debtor or its affiliates, as debtor and debtor-in-possession in the Chapter 11 Case**.


## ARTICLE XIII.

## ACCEPTANCE OR REJECTION OF PLAN

13.01.  Classes Entitled to Vote. Each impaired Class of Claims is entitled to vote and shall

vote separately to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

13.02.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

13.03.   Cramdown. This section shall constitute the request by the Plan proponents, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code may have not been met.

## ARTICLE XIV.

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

14.01.   Compromise and Settlement

(a)   Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the businesses or affairs of, or transactions with, the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Debtor's bankruptcy estate, Creditors and other parties in interest, and are fair, equitable, and within the range of reasonableness.

(b)   It is not the intent of the Debtor that confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtor and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

14.02.   Satisfaction of Claims. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtor, the Debtor's bankruptcy estate, and the Assets. Except as otherwise provided herein, on the Effective Date, all Claims against the Debtor shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtor and its affiliates, successors, assigns, the Debtor's bankruptcy estate and the Assets any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

14.03.   Discharge. The terms, covenants and consideration under the Plan shall be in

exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor and the Assets. Except as otherwise expressly provided herein, upon the Effective Date, the Debtor and the Reorganized Debtor, and their successors in interest and assigns, shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor, and their successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

14.04.  Injunction. On the Effective Date and except as otherwise provided in the Plan, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtor shall be permanently restrained and enjoined from taking any of the following actions against or affecting the Debtor, the Reorganized Debtor, the Debtor's bankruptcy estate, the Assets, or their respective assets and property, with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan):  (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to any such Claim or Interest; (b) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (d) asserting any control over, interest, rights or title in or to any of the Assets except as expressly provided in the Plan; (e) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Reorganized Debtor as assignee, except upon order of the Bankruptcy Court; and (f) performing any act, by any manner or means, whether directly or indirectly, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that this injunction shall not bar any Creditor from asserting any right granted pursuant to this Plan; provided, further, however, that each holder of a Contested Claim shall be entitled to enforce its rights under the Plan, including seeking allowance of such Contested Claim pursuant to the Plan.

14.05.  Setoffs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any claims, rights, Estate Claims and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtor of any such claims, rights, Estate Claims and Estate Defenses that the Debtor may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any claim, right, or Estate Claim of the Debtor without the consent of the Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to

preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

14.06. <u>Recoupment</u>. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, account receivable, or Estate Claim of the Debtor or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtor or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment; and (c) the Debtor or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Reorganized Debtor consent to the requested recoupment. The Debtor and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

14.07. <u>Turnover</u>. On the Effective Date, any rights of the Debtor's bankruptcy estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

14.08. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor and all Assets. As of the Effective Date, the automatic stay shall be replaced by the injunction described in section 12.04 of the Plan.

Dated:  September 7, 2018.

Respectfully submitted,

By:     /s/ Jose Marcos Montalvo
        Jose Marcos Montalvo

APPROVED:

Antonio Martinez, Jr.
The Law Office of Antonio Martinez, P.C.
State Bar No. 24007607
317 West Nolana Ave., Suite C
McAllen, Texas 78504
martinez.tony.jr@gmail.com
956-683-1090

ATTORNEY FOR DEBTOR AND
DEBTOR-IN-POSSESSION